**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Donald Beaty, | No. CIV 11-1037-PHX-NVW |
| Plaintiff, | **DEATH PENALTY CASE** |
| vs. | |
| Janice K. Brewer, Governor of Arizona; Charles L. Ryan, Director, Arizona Department of Corrections; Ernest Trujillo, Warden, Arizona Department of Corrections - Eyman; Carson McWilliams, Warden, Arizona Department of Corrections - Florence; Does 1-50, | **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION** |
| Defendants. | |

This matter is before the Court for consideration of Plaintiff Donald Edward Beaty's emergency motion for a temporary restraining order or a preliminary injunction. (Doc. 1.) Plaintiff Beaty, an Arizona inmate under sentence of death, is scheduled to be executed today, May 25, 2011, at 10:00 a.m. Yesterday, May 24, 2011, at 9:05 p.m., he filed in this Court the instant motion.[1] Respondents filed a response at 1:45 a.m. this morning, and

---

[1] Plaintiff also filed a motion in the Arizona Supreme Court requesting that court to vacate the warrant of execution or grant a stay. Subsequently, at approximately 10:45 p.m., the Arizona Supreme Court granted a temporary stay of execution and set Plaintiff's case for oral argument at 9:30 a.m. today. Pursuant to Rule 31.17(c)(3) of the Arizona Rules of Criminal Procedure, a warrant of execution is valid for twenty-four hours beginning at an hour designated by the director of the state department of corrections. In this case, that hour

several hours later Plaintiff filed a reply as well as a complaint pursuant to 42 U.S.C. § 1983 and an application to proceed *in forma pauperis*. (Docs. 3-7.) The complaint alleges that the manner and means by which the Arizona Department of Corrections (ADC) intends to execute him will violate his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. The Court has considered the pleadings and Plaintiff's complaint. For the reasons that follow, the Court denies Plaintiff's motion for a temporary stay of execution.

## BACKGROUND

The facts underlying Plaintiff's 1985 conviction and death sentence for the murder of 13-year-old Christy Ann Fornoff are detailed in the Arizona Supreme Court's decision on direct appeal and will not be repeated here. *See State v. Beaty*, 158 Ariz. 232, 236, 762 P.2d 519, 524 (1988). Because Plaintiff committed his crime before November 23, 1992, under Arizona law he has the choice to be executed by either lethal injection or lethal gas. *See* A.R.S. § 13-757(B). According to his complaint, Plaintiff declined to choose. Consequently, ADC must use lethal injection to execute him. *Id.*

In 2007, Plaintiff and several other Arizona condemned inmates filed a § 1983 complaint challenging numerous aspects of Arizona's then-in-effect lethal injection protocol. That protocol—which requires sequential administration of sodium thiopental, pancuronium bromide, and potassium chloride for execution by lethal injection—was based on Department Order 710, titled "Preparation and Administration of Chemicals," dated November 1, 2007, and as modified by an exhibit submitted by the parties as part of a joint report to the Court.

---

began at 10:00 a.m. this morning. Thus, if the Arizona Supreme Court ultimately denies Plaintiff's motion at some point today, this Court assumes Defendants would not be prohibited from rescheduling Plaintiff's execution prior to 10:00 a.m. tomorrow, May 26. Accordingly, and in the interests of expediency, this Court proceeds to address Petitioner's motion for injunctive relief, despite the temporary stay currently in effect. The Court further notes that the parallel motion before the Arizona Supreme Court may draw upon that court's plenary and supervisory power. The motion before this court may be granted only upon a showing of the federal substantive and procedural requirements discussed in this order.

*See Dickens v. Brewer*, No. CIV-07-1770-PHX-NVW, 2009 WL 1904294 at *1 & n.2 (D. Ariz. Jul. 1, 2009) (unpublished order). On July 1, 2009, this Court granted summary judgment in favor of Defendants, concluding that Arizona's three-drug protocol was "substantially similar" to that approved by the Supreme Court in *Baze v. Rees*, 553 U.S. 35 (2008), and thus did not subject inmates to a substantial risk of serious harm in violation of the Eighth Amendment. *Id.* On February 9, 2011, the Ninth Circuit Court of Appeals affirmed. *Dickens v. Brewer*, 631 F.3d 1139 (9th Cir. 2011). The appellate court's mandate issued on April 18, 2011.

At approximately 4:00 p.m. on Tuesday, May 24, 2011, less than 24 hours before Plaintiff's scheduled execution, ADC filed in Plaintiff's case at the Arizona Supreme Court a "Notice of Substitution of Drug." (Doc. 2, Ex. G.) The notice states that ADC intends to substitute pentobarbital for sodium thiopental in carrying out Plaintiff's execution but that Arizona's lethal injection protocol will otherwise remain the same as used in prior executions. (*Id.* at 1.) The notice further states that Arizona's protocol authorizes ADC's Director to make such a change and that the drug was obtained domestically. (*Id.*) Finally the notice, and a subsequently filed errata to the notice, indicates that on this same day (May 24), a United States Associate Deputy Attorney General contacted the Arizona Attorney General's Office requesting that the sodium thiopental ADC imported from a foreign source not be used in Plaintiff's May 25 execution because the Drug Enforcement Administration believes ADC failed to fill out one of the forms necessary for importation of the drug. (*Id.* at 2; Doc. 2, Ex. H.)

**DISCUSSION**

In his § 1983 complaint, Plaintiff alleges that ADC's last-minute substitution of pentobarbital violates his right to be free from cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment.

Plaintiff has moved for a temporary restraining order or a preliminary injunction to enjoin his execution and to allow for litigation of these claims. The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary

1 injunction. To be entitled to injunctive relief, a movant must demonstrate (1) that he is likely 2 to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of 3 preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction 4 is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374, 376 5 (2008); *National Meat Ass'n v. Brown*, 599 F.3d 1093, 1097 (9th Cir. 2010); *see also* 6 *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). The burden of persuasion is 7 on the movant, who must make "a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 8 (1997) (per curiam).

9 In the context of a capital case, the Supreme Court has emphasized that these 10 principles apply when a condemned prisoner asks a federal court to enjoin his impending 11 execution because "[f]iling an action that can proceed under § 1983 does not entitle the 12 complainant to an order staying an execution as a matter of course." *Hill v. McDonough*, 547 13 U.S. 573, 583-84 (2006). Rather, "a stay of execution is an equitable remedy" and "equity 14 must be sensitive to the State's strong interest in enforcing its criminal judgments without 15 undue interference from the federal courts." *Id.* at 584. In addition, "[a] court may consider 16 the last-minute nature of an application to stay execution in deciding whether to grant 17 equitable relief." *Beardslee*, 395 F.3d at 1068 (quoting *Gomez v. United States District* 18 *Court*, 503 U.S. 653, 654 (1991)). Thus, courts "must consider not only the likelihood of 19 success on the merits and the relative harms to the parties, but also the extent to which the 20 inmate has delayed unnecessarily in bringing the claim." *Id.* (quoting *Nelson v. Campbell*, 21 541 U.S. 637, 649-50 (2004)).

22 **I.     Likelihood of Success**

23 In his motion for injunctive relief, Plaintiff asserts that a last-minute drug substitution 24 will make it impossible for ADC to comply with the training requirement of Arizona's lethal 25 injection protocol. Without the "safeguard of training," Plaintiff argues his right to be free 26 from cruel and unusual punishment under the Eighth Amendment will be violated because 27 there is a substantial risk the anesthetic drug will not be properly administered. Plaintiff 28 further asserts he has a right to reasonable notice of changes to Arizona's lethal injection

protocol so that he can review and attempt to challenge them. Here, according to Plaintiff, ADC's failure to timely notify him of the drug substitution violates his right to due process under the Fourteenth Amendment because he lacks sufficient time to review the protocol change, as well as his medical records, to determine whether there are any constitutional concerns with the new drug.

### A. Alleged Eighth Amendment Violation

The Eighth Amendment "prohibits punishments that involve the unnecessary and wanton inflictions of pain, or that are inconsistent with evolving standards of decency that mark the progress of a maturing society." *Cooper v. Rimmer*, 379 F.3d 1029, 1032 (9th Cir. 2004). That prohibition necessarily applies to the punishment of death, precluding executions that "involve torture or a lingering death, or do not accord with the dignity of man." *Beardslee*, 395 F.3d at 1070. A violation of the Eighth Amendment can be established by demonstrating there is a risk of harm that is "*sure or very likely* to cause serious illness and needless suffering." *Helling v. McKinney*, 509 U.S. 25, 33, 34 (1993). In other words, there must be a "substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

In *Baze v. Rees*, the Supreme Court held that Kentucky's method of execution by lethal injection was consistent with the Eighth Amendment. The decision encompassed seven separate opinions involving three blocks of Justices. In *Ventura v. State*, 2 So.3d 194, 200 (Fla. 2009), the Florida Supreme Court observed that the *Baze* plurality:

> adopted a version of the substantial-risk standard, while Justice Breyer, concurring in the judgment, and Justices Ginsburg and Souter, dissenting, adopted a version of the unnecessary-risk standard. In contrast, Justices Thomas and Scalia renounced any risk-based standard in favor of a rule of law that would uphold any method of execution which does not involve the *purposeful* infliction of "pain and suffering beyond that necessary to cause death." Justice Stevens did not provide a separate standard but, instead, expressed general disagreement with (1) the death penalty based upon his long experience with these cases and the purported erosion of the penalty's theoretical underpinnings (deterrence, incapacitation, and retribution), and (2) the allegedly unnecessary use of the paralytic drug pancuronium bromide.

*Id.* at 199-200 (citations and footnotes omitted). In response to Justice Stevens's suggestion that the plurality opinion leaves the disposition of other cases uncertain, Chief Justice

- 5 -

1 Roberts wrote:

2 > [T]he standard we set forth here resolves more challenges than [Justice Stevens] acknowledges. *A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain.* He must show that the risk is substantial when compared to the known and available alternatives. A State with a lethal injection protocol similar to the protocol we uphold today would not create a risk that meets this standard.

*Baze*, 553 U.S. at 61 (emphasis added).

The ADC's Department Order 710 "establishes procedures for planning and carrying out the execution of a person convicted of a capital offense and sentenced to death." Department Order 710 provides:

> These procedures shall be followed as written unless deviation or adjustment is required, as determined by the Arizona Department of Corrections (Department). This Department Order outlines internal procedures and does not create any legally enforceable rights or obligations.

As currently written, the protocol requires sequential administration of: (1) sodium thiopental, a ultra fast-acting barbiturate that induces unconsciousness; (2) pancuronium bromide, a paralytic neuromuscular blocking agent that prevents any voluntary muscle contraction; and (3) potassium chloride, which causes skeletal muscle paralysis and cardiac arrest. "It is uncontested that, failing a proper dose of sodium thiopental that would render [a] prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride." *Baze*, 553 U.S. at 53.

Arizona's written protocol notwithstanding, ADC has notified Plaintiff, less than 24 hours prior to his scheduled execution, that it intends to substitute pentobarbital for sodium thiopental in its lethal injection protocol. Plaintiff argues that this last-minute substitution means the State cannot comply with the training requirements of its protocol and thus there is a substantial risk of serious harm that the anesthetic drug will not be properly administered if his execution proceeds as scheduled. The protocol's training requirements mandate that all execution medical team members understand *and practice* the lethal injection procedures, including inserting the IV catheters, ensuring the IV line is functioning properly throughout

1   the procedure, mixing the chemicals, preparing the syringes, monitoring the inmate's level
2   of consciousness, and supervising the administration of the chemicals.

3   In their response, Defendants assert that the task of administering pentobarbital in
4   place of sodium thiopental constitutes only a "minor variation" in the protocol that does not
5   require retraining of the execution medical team. Defendants further cite cases from
6   Oklahoma and Alabama that have rejected Eighth Amendment challenges to the substitution
7   of pentobarbital for sodium thiopental. *See Powell v. Thomas*, No. 11-12238, 2011 WL
8   1899564 (11th Cir.), *cert. denied*, No. 10-10589, 2011 WL 1894851 (U.S. May 19, 2011);
9   *Pavatt v. Jones*, 627 F.3d 1336 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 974 (2011). In
10  reply, Plaintiff cites the deposition of Defendants' expert in *Dickens v. Brewer*, Dr. Mark
11  Dershwitz, who explained that preparation of pentobarbital would be more complicated than
12  that of sodium thiopental because it comes in tiny syringes and approximately 50 of these
13  would have to be mixed to constitute the five grams required by the protocol. (Deposition
14  of Mark Dershwitz, M.D., Dec. 9, 2008, 173:5-8, *Dickens v. Brewer*, No. CIV-07-1770-
15  PHX-NVW, Doc. 109-1 at 45.)

16  The Court is sympathetic to Plaintiff's arguments and is troubled by the timing of both
17  the Department of Justice's request that ADC's sodium thiopental not be used in Plaintiff's
18  execution and the ADC's decision to substitute pentobarbital. However, to show a likelihood
19  of success on the merits of his Eighth Amendment claim, Plaintiff must demonstrate that the
20  substitution of pentobarbital creates a "demonstrated risk of severe pain." *Baze*, 553 U.S. at
21  61. This he has not done.

22  First, Plaintiff has not alleged that use of pentobarbital in place of sodium thiopental
23  will cause him serious pain or fail to sufficiently anesthetize him. He does not dispute
24  Respondents' assertion that pentobarbital is, like sodium thiopental, a fast-acting barbiturate.
25  Indeed, both the Tenth and Eleventh Circuits have found that use of pentobarbital does not
26  create a substantial risk of serious harm. *See Powell*, 2011 WL 1899564, at *2; *Pavatt*, 627
27  F.3d at 1340. In addition, pentobarbital has been used either singularly or as a substitute for
28

1 sodium thiopental in executions in Mississippi, Ohio, South Carolina, and Texas.[2]

2 Second, although Plaintiff correctly notes that ADC's medical execution team did not
3 learn until yesterday of the drug substitution and thus likely did not practice preparing
4 syringes with pentobarbital, this fact alone in insufficient to make a "clear showing" of likely
5 success on the merits. This is because Arizona's protocol has significant safeguards in place
6 to ensure that a prisoner is fully anesthetized prior to administration of pancuronium bromide
7 and potassium chloride.

8 As noted by this Court in *Dickens*, although electronic monitors may be used to
9 measure brain activity, physical examination such as stroking a patient's eyelashes to look
10 for reflex and monitoring his breathing pattern is as good or better for assessing the depth of
11 anesthesia. 2009 WL 1904294, at *12. To this end, the Arizona protocol:

> requires that a microphone "be affixed to the inmate's shirt to enable the Medical Team and Special Operations Team Leader to verbally communicate directly with the inmate and hear any utterances or noises made by the inmate throughout the procedure." It requires that the inmate "be positioned to enable the Medical Team and Special Operations Team Leader to directly observe the inmate and to monitor the inmate's face with the aid of a high resolution color NTSC CCD camera with 10x Optical zoom lens with pan tilt capability and a 19-inch resolution color monitor." It requires the Medical Team to "continually monitor the inmate's level of consciousness and electrocardiograph readings, maintaining constant observation of the inmate utilizing direct observation, audio equipment, camera and monitor as well as any other medically approved method(s) deemed necessary by the Medical Team." It requires the warden to "physically remain in the room with the inmate throughout the administration of the chemicals in a position sufficient to clearly observe the inmate and the primary and backup IV sites for any potential problems." Further, after administration of the sodium thiopental and heparin/saline flush, the Medical Team must "confirm the inmate is

---

[2] *See Mississippi Executes Man with New Lethal Injection Cocktail*, USA Today (May 10, 2011 9:14 PM), http://www.usatoday.com/news/nation/2011-05-10-mississippi-execution-drug_n.htm; *Jeffrey Motts becomes 1st S.C. Inmate Executed with New Lethal Mix*, Greenville Online.com (May 6, 2011 2:00 AM), http://www.greenvilleonline.com/article/20110506/NEWS/305070001/Jeffrey-Motts-becomes-1st-S-C-inmate-executed-with-new-lethal-mix; *Texas Executes First Inmate Using Drug Used on Animals*, Reuters (May 4, 2011 9:18 AM), http://www.reuters.com/article/2011/05/04/us-texas-execution-idUSTRE74300F20110504; *Ohio Executes Inmate with New Death-Penalty Drug*, Washington Times (Mar. 10, 2011 12:56 PM), http://www.washingtontimes.com/news/2011/mar/10/ohio-executes-inmate-new-death-penalty-drug/.

> unconscious by sight and sound, utilizing the audio equipment, camera and monitor," and a Medical Team member must "enter into the room where the inmate is located to physically confirm the inmate is unconscious, and that the catheter and lines are affixed and functioning properly, using methods deemed medically necessary." Although the Arizona Protocol does not define "methods deemed medically necessary," it is likely that Medical Team members, who must be medically trained, would be able to assess consciousness by telling the patient to respond and, upon receiving no response, be able to look for a simple reflex response to a tactile stimulus.

*Id.* at *21. If it appears that a prisoner is not fully anesthetized, the protocol prohibits the administration of any further drugs. Given these safeguards, there is very little risk that Plaintiff would suffer unnecessary pain in the event execution team members fail to properly prepare the pentobarbital syringes. *See Cook v. Brewer*, 637 F.3d 1002, 1007-08 (9th Cir. 2011), *cert. denied*, No. 10-9824, 2011 WL 1258192 (U.S. May 16, 2011) (rejecting claim of substantial risk of pain from administration of allegedly incorrect, diluted or adulterated anesthetic in light of consciousness check prior to administration of other two drugs); *see also Dickens*, 631 F.3d at 1141 (stating that Arizona protocol's safeguards are adequate under *Baze* standard).

Finally, in concluding that Plaintiff has failed to establish a likelihood of success on the merits, the Court observes that any risk of mistake from the execution medical team's lack of practice using pentobarbital is speculative and fails to rise to the level required to demonstrate a substantial risk of serious harm under Eighth Amendment jurisprudence. *See Campbell v. Wood*, 18 F.3d 662, 687 (9th Cir. 1994) ("The risk of accident cannot and need not be eliminated from the execution process in order to survive constitutional review."). Furthermore, "an isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" *Baze*, 553 U.S. at 50 (plurality opinion) (quoting *Farmer*, 511 U.S. at 842).

### B. Alleged Due Process Violation

To establish a procedural due process violation, Plaintiff must show that (1) he had a property or liberty interest that was interfered with by Defendants, and (2) Defendants failed to use constitutionally sufficient procedures in depriving Plaintiff of that right.

- 9 -

1 *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). "[A]n individual 2 claiming a protected interest must have a legitimate claim of entitlement to it. Protected 3 liberty interests 'may arise from two sources – the Due Process Clause itself and the laws of 4 the States.'" *Id.* (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)).

5 Plaintiff has not alleged that Arizona law creates an enforceable liberty interest. 6 Indeed, as the Court explained in *Dickens*, Arizona's lethal injection protocol is not 7 statutory—it is issued by ADC and sets out technical procedures for carrying out lethal 8 injection. Rules made by ADC are exempted from the general rule-making provisions of the 9 Administrative Procedures Act. *See* A.R.S. § 41-1005(A)(23).

10 In *Dickens*, this Court observed that "[t]here appears to be no dispute that each 11 Plaintiff is entitled to notice of any amendment to the Arizona Protocol if the amendment will 12 be in effect for the Plaintiff's execution." 2009 WL 1904294, at * 23 n.9. For this 13 proposition, the Court cited *Oken v. Sizer*, 321 F.Supp. 2d 658, 664 (D. Md. 2004), in which 14 that court stated: "Fundamental fairness, if not due process, requires that the execution 15 protocol that will regulate an inmate's death be forwarded to him in prompt and timely 16 fashion." In *Oken*, the court stayed the plaintiff's execution and required the defendants to 17 produce the state's recently-amended execution protocol, explaining that "[d]ue process 18 requires . . . an opportunity to receive notice of how one's rights will be affected and 19 opportunity to respond and be heard." *Id.* at 665.

20 In his motion for injunctive relief, Plaintiff relies on *Oken* in support of his assertion 21 that he has a right to reasonable notice of protocol changes so that he can ensure such 22 changes comport with constitutional requirements. However, this Court cannot rely on one 23 district court's unsupported assertion that capital plaintiffs have such a due process right, 24 especially in view of the fact that the United States Supreme Court vacated the stay of 25 execution granted by the district court in *Oken*. *See Sizer v. Oken*, 542 U.S. 916 (2004).

26 Moreover, other than the district court order in *Oken*, Plaintiff cites no authority to 27 support his allegation that the Due Process Clause provides a right to review protocol 28 changes and attempt to challenge them. Other courts to address this issue have found no such

- 10 -

authority. *See Clemons v. Crawford*, 585 F.3d 1119, 1129 n.9 (8th Cir. 2009) (noting lack of authority indicating due process right to probe into backgrounds of execution personnel); *Powell v. Thomas*, No. 2:11-CV-376-WKW, 2011 WL 1843616 at *10 (M.D. Ala. May 16, 2011) (finding no authority for proposition that condemned inmate has due process right to receive notice and an opportunity to be heard regarding substitution of pentobarbital).

Given the lack of authority to support Plaintiff's procedural due process violation, the Court finds that he has failed to establish a likelihood of success on the merits of that claim to notice. Moreover, even assuming Plaintiff is entitled to some measure of notice of the drug substitution, rights to notice are in service of protecting substantive rights. Plaintiff has not shown any credible prospect that the notice 18 hours prior to his scheduled execution may lead to cruel and unusual punishment. There is no prospect that pentobarbital in general is an insufficient anesthetic, and Plaintiff does not contend it is. This case comes down to an attempted constitutionalization of the planned regimen for practice by staff, with nothing but guessing that staff lack the judgment and skill to administer the pentobarbital in this case. The nearly failsafe protections in the protocol against proceeding without full anesthetization, as summarized in this order, make both the short notice and the speculations about staff training meaningless as to protecting Plaintiff from pain. The Court concludes that any challenge to the use of pentobarbital would likely fail to establish a substantial risk of unnecessary pain.

## II.     **Irreparable Harm**

The Court also concludes that Plaintiff has not shown that he is likely to suffer irreparable harm in the absence of a stay. Plaintiff asserts that he is at risk of suffering pain if the pentobarbital does not adequately anesthetize him. However, as already discussed, the mere fact that medical team members have not practiced using pentobarbital fails to establish a substantial risk of harm. *See Lambert v. Buss,* 498 F.3d 446, 452 (7th Cir. 2007) (finding no irreparable harm from "mere possibility" unforeseen complication will cause unnecessary pain). Moreover, the risk of harm is substantially mitigated by the safeguards outlined above that will ensure Plaintiff is fully anesthetized before the second and third drugs are

administered.

## III. Balance of Equities & Public Interest

Plaintiff murdered Christy Ann Fornoff over twenty-five years ago. In *Hill v. McDonough*, the Supreme Court recognized the "important interest in the timely enforcement of a sentence" and cautioned that federal courts "can and should protect States from dilatory or speculative suits." 547 U.S. at 584-85. Given the State's "strong interest in enforcing its criminal judgments without undue interference from the federal courts," and because "the victims of crime have an important interest in the timely enforcement of a sentence," the Court concludes that the balance of equities favors Defendants and that a stay of execution to resolve Plaintiff's speculative allegations is not in the public interest. *Id.* at 584.

## CONCLUSION

Plaintiff has not demonstrated entitlement to injunctive relief.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order or Preliminary Injunction (Doc. 1) is **DENIED**.

DATED this 25th day of May, 2011.

_____
Neil V. Wake
United States District Judge